```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JAMIE GREENE, et al.

                        Plaintiffs,
                                                            MEMORANDUM
            v.                                              AND ORDER
                                                            22-CV-3300-SJB-ST
METROPOLITAN TRANSPORTATION
AURHORITY, et al.,

                        Defendants.
-----------------------------------------------------------------X
```
**BULSARA, United States District Judge:**

Currently before the Court is Defendants' motion for partial summary judgment on the limited question of whether Plaintiffs—employees of several New York rail entities—are protected by the Fair Labor Standards Act ("FLSA"). For the reasons explained below, the Court concludes that the statute's protections do not extend to these Plaintiffs, and Defendants' motion is granted.

PROCEDURAL HISTORY

Plaintiffs Jamie Greene, Lamell Armor, and Fabian Saugar initiated this case on June 3, 2022, seeking to bring collective action claims under the FLSA and class action claims under the New York Labor Law ("NYLL"). (Compl., Dkt. No. 1 ¶¶ 2–3). Greene, Armor, and Saugar, together with John Brennan and Arthur Bennett (collectively, "Plaintiffs"), filed their Amended Complaint against the Metropolitan Transportation Authority ("MTA"), Long Island Railroad ("LIRR"), Metro-North Railroad ("MNR"), Staten Island Railway, MTA Construction and Development, MTA Regional Bus Operations, MTA Bridges and Tunnels, and New York City Transit

Authority (collectively, "Defendants") on July 28, 2022.  (Am. Compl., Dkt. No. 24 at 1).  The Amended Complaint alleges "underpayments and late payments of wages" by Defendants, some linked to a payroll service outage, and some stemming from a general failure to properly calculate overtime rates.  (*Id.* ¶¶ 1, 4, 10).  Plaintiffs brought four claims, each on behalf of the relevant class or collective, alleging: 1) late payments of overtime wages in violation of the FLSA, brought by all Plaintiffs, (*id.* ¶¶ 91–102); 2) late payments in violation of the NYLL, brought by all Plaintiffs, (*id.* ¶¶ 103–10); 3) unpaid overtime in violation of the FLSA, brought by Plaintiffs Greene, Armor, and Saugar, (*id.* ¶¶ 111–22); and 4) unpaid overtime in violation of the NYLL, brought by Plaintiffs Greene, Armor, and Saugar, (*id.* ¶¶ 123–30).

Defendants first moved to dismiss the Amended Complaint in part, seeking to dismiss all the NYLL claims and the FLSA claims brought by the LIRR employees, Greene, Armor, and Saugar, and the MNR employee, Brennan.[1]  (Defs.' Mem. in Supp. of Mot. to Dismiss dated Dec. 23, 2022, Dkt. No. 46 at 7–8).  Magistrate Judge Tiscione then issued a Report and Recommendation ("R&R") that the motion be granted in full, *Greene v. Metro. Transp. Auth.*, No. 22-CV-3300, 2024 WL 1051166, at *1 (E.D.N.Y. Feb. 26, 2024), to which Plaintiffs objected, (Pls.' Objs. dated Mar. 11, 2024, Dkt. No. 68).  In separate orders, Judge Azrack adopted the recommendation to dismiss the NYLL overtime claims, *Greene v. Metro. Transp. Auth.*, No. 22-CV-3300, 2024 WL 1343594, at *3 (E.D.N.Y. Mar. 30, 2024), and separately adopted the recommendation to dismiss the

---

[1] Defendants did not seek to dismiss the FLSA claims of non-rail workers, such as Plaintiff Bennett, employed by a division of the New York City Transit Authority.  (Am. Compl. ¶ 31).

2

NYLL late payment claims but overruled the recommendation that the rail workers' FLSA claims be dismissed, *Greene v. Metro. Transp. Auth.*, No. 22-CV-3300, 2024 WL 4235480, at *15 (E.D.N.Y. Sep. 19, 2024) [hereinafter *Greene I*]. Defendants now seek partial summary judgment on these claims.[2]  (Defs.' Mem. in Supp. of Mot. for Summ. J. dated Mar. 18, 2025 ("Defs.' Mot."), Dkt. No. 86 at 1).

Judge Azrack's decisions frame the issues currently before the Court.  First, the FLSA regulates maximum working hours and overtime pay, but exempts rail carrier employees from coverage—specifically, as amended, the FLSA exempts "any employee of an employer engaged in the operation of a rail carrier subject to part A of subtitle IV of Title 49." *Greene I*, 2024 WL 4235480, at *7 (quoting 29 U.S.C. § 213(b)(2)). "Part A of subtitle IV of Title 49" refers to the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). *Id.*  The ICCTA is the successor to the Interstate Commerce Act ("ICA"), the law which created the Interstate Commerce Commission ("ICC") to regulate interstate rail carriers. *Id.* at *8. The ICCTA abolished the ICC and created the Surface Transportation Board ("STB") in its place.[3]  *Id.* at *11.  Judge Azrack found that Defendants' FLSA liability as to the rail worker Plaintiffs turned on two questions: 1) whether "the STB ha[s] jurisdiction, in some fashion, over Defendants under the

---

[2] This case was reassigned from the Honorable Joan M. Azrack to the undersigned on January 15, 2025.

[3] Though the Second Circuit held in 1989 that MNR was exempt from the FLSA, that was under the now-defunct ICC regime—the subsequent statutory landscape changes led Judge Azrack to conclude that the Circuit's 1989 decision was no longer operative. *Greene I*, 2024 WL 4235480, at *12 (discussing *Farley v. Metro -N. Commuter R.R.*, 865 F.2d 33 (2d Cir. 1989)).

3

ICCTA," and 2) "if the STB currently has jurisdiction over Defendants in some fashion, is that jurisdiction sufficient to render Defendants 'subject to [the ICCTA]' and therefore exempt from the FLSA's maximum hour requirements under 29 U.S.C. § 213(b)(2)." *Id.* at *12.

Defendants failed to meet their burden to show that they were exempt from the FLSA in their motion to dismiss, citing only a few STB decisions that did not clearly establish the basis for the STB's jurisdiction or prove that the STB had jurisdiction at the relevant times. *Id.* at *13. Accordingly, Judge Azrack directed the parties to complete expedited fact discovery limited to this exemption issue, and then to proceed to summary judgment briefing:

> Defendants' motion for partial summary judgment must address the following questions: First, whether (and how) the STB currently exercises jurisdiction over Defendants under the ICCTA. Defendants shall explain and identify the specific statutory basis (or bases) for STB's alleged jurisdiction over Defendants. Defendants shall also provide the Court with any relevant administrative and judicial decisions to support their claims, as well as any evidence that may be necessary to establish the STB's alleged jurisdiction over Defendants. Second, if the STB has jurisdiction over only limited and discrete aspects of Defendants' operations under the ICCTA, Defendants shall explain why they contend they are still "subject to [the ICCTA]" and therefore exempt from the FLSA's maximum hour requirements under 29 U.S.C. § 213(b)(2). Otherwise put, the parties should address whether STB's limited exercise of jurisdiction over Defendants or their operations is sufficient or insufficient to [] trigger the FLSA's rail carrier exemption.

*Greene I*, 2024 WL 4235480, at *14. Unfortunately, the parties' summary judgment briefs are not framed around these two questions, and they fail to explain what, if any, additional discovery was completed. Despite this less than pellucid presentation, there is sufficient record evidence to warrant granting of the motion.

4

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth

purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b). In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). "Legal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)). The court may not grant summary judgment

6

based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence). The Court must also disregard conclusory denials that lack citations to admissible evidence. *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.* They should contain factual assertions, with citation to the record. They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003). Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted." Loc. Civ. R. 56.1(c). The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits. *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

FACTUAL BACKGROUND

The Court finds the following facts relevant to its decision—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—are undisputed unless otherwise noted.  Unfortunately, the parties mistake Rule 56.1 statements for opportunities to advance legal arguments.  The parties' statements generally contain disputes over the meaning of various provisions within contracts between rail entities, or summaries of STB decisions.  Such items are improper in a Rule 56.1 statement.  As such, there are only a mere handful of facts that the Court considers on this motion.  They are as follows:

Greene, Armor, and Saugar were employed by LIRR, and Brennan was employed by MNR.  (Defs.' Rule 56.1 Statement dated Mar. 18, 2025 ("Defs.' 56.1 Stmt."), Dkt. No. 87 ¶ 1; Pls.' Resp. to Defs.' 56.1 Stmt. dated Apr. 18, 2025 ("Pls.' 56.1 Stmt."), Dkt. No. 90 ¶ 1).

MNR operates a commuter rail service pursuant to the passenger service rights it acquired to the Harlem, Hudson, and New Haven Lines from Consolidated Rail Corporation, (Defs.' 56.1 Stmt. ¶ 2; Pls.' 56.1 Stmt. ¶ 2), and the Maybrook Line it acquired from a private corporation, (Defs.' 56.1 Stmt. ¶ 7; Pls.' 56.1 Stmt. ¶ 7).  The parties dispute the degree to which MNR retains and exercises control over *all* rail operations on its tracks, including freight service operated by Conrail.  (Pls.' 56.1 Stmt. ¶¶ 3–4; Defs.' Reply to Pls.' 56.1 Stmt. dated May 9, 2025, Dkt. No. 93 ¶¶ 3–4).

LIRR owns rail lines used for freight and passenger rail service in New York City and Nassau and Suffolk counties, pursuant to a transfer from New York & Atlantic

Railway ("NYAR"). (Defs.' 56.1 Stmt. ¶ 9; Pls.' 56.1 Stmt. ¶ 9). NYAR has exclusive rights to freight rail service on LIRR lines, but LIRR retains authority over maintenance and operating rules, as well as some dispatching services. (Defs.' 56.1 Stmt. ¶¶ 10, 12; Pls.' 56.1 Stmt. ¶¶ 10, 12).

## DISCUSSION

This case is, at its core, a question of statutory interpretation. To resolve the issue of whether the FLSA applies to these workers or not, the Court must determine whether they fall within an exemption: "any employee of an employer engaged in the operation of a rail carrier subject to part A of subtitle IV of Title 49." 29 U.S.C. § 213(b)(2). Put simply, the FLSA exempts rail carriers subject to the STB from its overtime provisions. And federal law specifically defines what a rail carrier is, as well as the bounds of the STB's jurisdiction. Applying those precepts together, both MNR and LIRR fall within the exemption, and thus the rail workers cannot assert FLSA claims. The Court addresses Plaintiffs' novel arguments to the contrary, including 1) that these railroads are not rail carriers; 2) that the STB's limited jurisdiction over certain MNR and LIRR facilities means that they are not rail carriers; and 3) that the public transportation exception to the STB's jurisdiction (to which MNR and LIRR are entitled) means that the FLSA *does* apply to these workers. Ultimately, these novel arguments are without any basis in the statutory text and foreclosed by binding precedent from the Second Circuit.

## I.     Whether MNR and LIRR are Rail Carriers

Plaintiffs first contend that the LIRR and MNR are not employers "engaged in the operation of a rail carrier," 29 U.S.C. § 213(b)(2), which, if true, would preclude

9

them from taking advantage of the rail carrier exemption under the FLSA. As explained below, both are rail carriers.

"[R]ail carrier" is not defined in the FLSA. The parties do not dispute that the relevant definition is contained in the ICCTA: "a person providing common carrier railroad transportation for compensation, but does not include street, suburban, or interurban electric railways not operated as part of the general system of rail transportation." 49 U.S.C. § 10102(5). It is undisputed that "MNR operates passenger commuter rail service," (Defs.' 56.1 Stmt. ¶ 2; Pls.' 56.1 Stmt. ¶ 2). And "LIRR owns rail lines used for freight and passenger commuter rail service . . . between Nassau and Suffolk counties and New York City." (Defs.' 56.1 Stmt. ¶ 9; Pls.' 56.1 Stmt. ¶ 9), meaning both entities provide a form of "common carrier railroad transportation." *See also Buffalo S. R.R. Inc. v. Vill. of Croton-on Hudson*, 434 F. Supp. 2d 241, 250 (S.D.N.Y. 2006) ("Under the ICCTA, a 'rail carrier' is simply a 'a person providing common carrier railroad transportation for compensation, [excluding local mass transit operations].' Under the literal terms of that definition, BSOR is a rail carrier. . . . It provides common carrier railroad transportation for compensation in Buffalo and its environs. And it holds itself out as providing common carriage . . . in Westchester County. Therefore, it is a rail carrier." (citation omitted)).

To complement the statutory definition, the ICC developed a two-part test to determine whether an entity is a rail carrier, which has since been applied by courts in this District. *See, e.g.*, *Coastal Distrib., LLC v. Town of Babylon*, No. 05-CV-2032, 2006 WL 270252, at *9 (E.D.N.Y. Jan. 31, 2006), *aff'd as modified*, 216 F. App'x 97 (2d Cir. 2007).

10

That test is simply: "First, does the entity conduct rail operations?  Second, does the entity hold out that service to the public?"  *Id.* (quotations omitted).  Both entities meet this separate test as well.  There is no dispute that both conduct rail operations, and as Plaintiffs acknowledge, "[b]oth LIRR and MNR . . . provide transportation to the public," (Pls.' Opp'n to Defs.' Mot. for Summ. J. dated Apr. 18, 2025 ("Pls.' Opp'n"), Dkt. No. 89 at 2), meaning both entities fall within the ICC's application of the statutory definition.

Plaintiffs try to concoct a legal argument as to why this cannot be the case and appear to conflate STB jurisdiction with the definition of "rail carrier."  Part of Plaintiffs' argument is that the STB does not exercise jurisdiction over MNR or the LIRR as rail carriers, because of the public transportation exception to STB jurisdiction, 49 U.S.C. § 10501(c)(2)(A), and thus neither entity is a rail carrier.  (Pls.' Opp'n at 3–4, 8).  But it can cite no case or provision that renders the STB's jurisdictional grant dispositive of an entity's rail carrier status.[4]

---

[4] Plaintiffs repeatedly contend that "MNR is explicitly described, throughout multiple filings before the STB, as a non-rail carrier."  (Pls.' Opp'n at 5).  But MNR's self-described status in attorney declarations submitted to the STB in other cases and contexts cannot control whether it falls within the statutory definition for the purposes of the FLSA.  Relatedly, the Court notes that the parties do not brief how this Court should treat decisions by the ICC or STB.  None of the cited agency decisions directly address the questions at issue here, and this case does not involve direct enforcement or review of agency decisions, including the ICC's or STB's interpretations of the statutes at issue.  *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), is therefore not implicated, and ICC or STB authority is at best informative, not binding.  *Cf. McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.").

11

Plaintiffs—and Defendants in response—then engage in an extensive back and forth about a 1995 ICC decision, *Metro North Commuter Railroad Co. – Acquisition Exemption – the Maybrook Line; Metro North Commuter Railroad Co. – Exemption – from 49 U.S.C. Subtitle IV*, No. 32639, 1995 WL 11215 (I.C.C. Jan. 12, 1995) [hereinafter *MNR 1995 Exemption*].  There, the ICC said MNR "provides interstate commuter rail services in the New York metropolitan area, but it does not provide common carrier freight service or intercity rail passenger service as defined by the Rail Passenger Service Act of 1970, 45 U.S.C. 561." *Id.* at *1.  Using this quotation, Plaintiffs contend that MNR does not provide common carrier railroad transportation and, therefore, is not a "rail carrier." (Pls.' Opp'n at 5).  But as the quote illustrates, the ICC was interpreting the Rail Passenger Service Act ("RPSA"), and in particular the definition of "intercity rail passenger service" that the newly crafted Amtrak would assume.  That provision has since been amended and was eventually repealed in 1994; related provisions are now codified at 49 USC § 24703.  And as the parties concede, the relevant definition of "rail carrier" is in the ICCTA.  (*Id.* at 3 n.2).  In short, an agency's interpretation of a different term in a now defunct statute has no bearing on whether the ICCTA definition covers MNR.

Plaintiffs similarly contend that a 2015 STB decision found that the LIRR is not a rail carrier.  (*Id.* at 9).  But the decision says that LIRR *is* a rail carrier.  *See Pinelawn Cemetery – Petition for Declaratory Order*, No. FD 35468, 2015 STB LEXIS 126, at *21 (S.T.B. Apr. 20, 2015) ("The record shows that LIRR, a rail carrier[.]").  Indeed, the STB decision analyzed whether LIRR abandoned a track—the "key consideration" being whether the

12

entity "has continued to exhibit a fixed and continuing intent to hold out to provide common carrier rail service to the public." *Id.* at \*28.  The STB concluded that there was sufficient evidence of LIRR's intent to provide such service, and that it did not abandon the track at issue.  *Id.* at \*28–\*29.

## II. STB Jurisdiction Over Defendants Under the ICCTA

Next, the Court addresses the first issue posed by Judge Azrack: the STB's jurisdiction over MNR and LIRR.  The STB generally has jurisdiction over "transportation by rail carrier that is . . . only by railroad."  49 U.S.C. § 10501(a)(1)(A).  Its jurisdiction applies to transportation between a place in "a State and a place in the same or another State as part of the interstate rail network," *id.* § 10501(a)(2)(A), subject to the exception for public transportation provided by a local government authority, *id.* § 10501(c)(2)(A).

Defendants contend that because the STB has granted various regulatory exemptions to MNR and LIRR, those railroads are subject to STB jurisdiction.  (Defs.' Mot. at 8).  That is significant, since the STB can only grant exemptions to "a rail carrier providing transportation subject to the jurisdiction of the Board."  49 U.S.C. § 10502(a).

### 1. MNR

Defendants cite two STB cases to establish jurisdiction over MNR.  The first is an ICC decision from 1982 exempting MNR's acquisition of the Harlem, Hudson, and New Haven Lines operating out of Grand Central.  (*Metro-N. Commuter R.R. – Exemption From 49 U.S.C. Subtitle IV*, No. 30063 (I.C.C. served Dec. 2, 1982), attached to Aff. of Brian A. Bodansky in Supp. of Defs.' Mot. for Summ. J. as Ex. 3, Dkt. No. 88-3).  That

13

decision explains the statutory basis for STB jurisdiction over MNR under 49 U.S.C. § 10505, (*id.* at 3), the ICC equivalent of the ICCTA's jurisdictional grant, 49 U.S.C. § 10502.  But it is also over 40 years old.  *See Greene I*, 2024 WL 4235480, at *13 ("Moreover, these twenty-two year-old STB decisions do not establish, on their own, that the LIRR is currently subject to the Board's jurisdiction.").

The second is the decision that Judge Azrack noted Defendants failed to bring to the Court's attention at the motion to dismiss stage, and thus that the Court did not consider in *Greene I*. *Id.* at *13.  In *Metro-North Commuter Railroad Co. — Exemption — from 49 U.S.C. Subtitle IV*, No. FD 32639, 2023 WL 8118269, at *1 (S.T.B. Nov. 21, 2023), the STB granted MNR's request to partially revoke an exemption STB had granted MNR in 1995 over a rail line located in Dutchess and Putnam counties.  That 1995 exemption was granted in the first place because the STB had jurisdiction over MNR.  *See MNR 1995 Exemption*, 1995 WL 11215, at *3.  The 2023 revocation shows that the STB continues to exercise jurisdiction over MNR under the ICCTA, as the ICC did under the ICA.

### 2. LIRR

Defendants cite several STB cases to establish jurisdiction over LIRR.  In *Pinelawn Cemetery*—a dispute that resolved whether the STB had jurisdiction over a railroad yard leased by the LIRR from a private entity—the STB concluded "that the Farmingdale Yard is a railroad facility and that the facility and its excepted ancillary track are subject to our jurisdiction."  2015 STB LEXIS 126, at *20.  Other STB decisions similarly provide evidence of its continuing jurisdiction over LIRR.  *See Long Island R.R. Co. —*

*Abandonment Exemption – in Queens Cnty., N.Y.*, No. AB 837, 2016 WL 270963, at *3 (S.T.B. Jan. 21, 2016) ("Under 49 U.S.C. § 10502, we exempt from the prior approval requirements of 49 U.S.C. § 10903 the abandonment by LIRR of the above-described segments of rail line[.]"); *New York & Atl. Ry. Co. – Discontinuance of Serv. Exemption – in Queens Cnty., N.Y.*, No. AB 1236X, 2016 WL 270960, at *3 (S.T.B. Jan. 21, 2016) ("Under 49 U.S.C. § 10502, we exempt from the prior approval requirements of 49 U.S.C. § 10903 the discontinuance of operations by NYA[5] over the above-described segments of rail line," subject to certain employee protective conditions.).  These three decisions, which cite the STB's general jurisdictional statute or its authorization to exempt rail carriers subject to its jurisdiction as their authority, establish the STB's jurisdiction over the LIRR.

Plaintiffs contend that 49 U.S.C. § 10501(b)(2) creates an independent grant of STB authority over actions by non-rail carriers—and if the STB has exercised its jurisdiction under that provision, the employer is not a rail carrier.  (Pls.' Opp'n at 3–4).  But the Second Circuit rejected such an interpretation.  In *New York & Atlantic Railway Co. v. Surface Transportation Board*, it resolved an appeal from a decision which determined that STB lacked exclusive jurisdiction over a facility owned by NYAR and operated by an independent transloading[6] company.  635 F.3d 66, 68 (2d Cir. 2011).

---

[5] NYAR operated, but LIRR owned, the segments of the rail line at issue.  *New York & Atl. Ry. Co. – Discontinuance of Serv. Exemption*, 2016 WL 270960, at *1.

[6] "Transloading is the practice of transferring a shipment from one mode of transportation to another, i.e. from trucks to rail cars." *New York & Atl. Ry. Co.*, 635 F.3d at 68 n.2.

15

NYAR argued that "Section 10501(b)(2) constitutes an independent grant of jurisdiction . . . even if the activities in question are not performed by or under the control of a rail carrier." *Id.* at 72.  The Second Circuit rejected the argument: "We agree with the STB's reading of the statute . . . Both the courts and the STB thus consistently find that to fall within the STB's exclusive jurisdiction, the facility or activity must satisfy both the 'transportation' and 'rail carrier' statutory requirements." *Id.*

In summary, Defendants have presented sufficient agency case authority to prove that MNR and LIRR are subject to the STB's jurisdiction, which qualifies them for the exemption from FLSA's overtime provisions.  Plaintiffs' arguments in opposition are contrary to the plain reading of the statute and have already been rejected by the Second Circuit.

**III.   Whether STB Jurisdiction is Sufficient for the FLSA Exemption**

The final question remains whether the power the STB exercises over MNR and LIRR is so limited that it disqualifies them from the FLSA exemption.  Judge Azrack noted that "[t]he plain language of 29 U.S.C. § 213(b)(2) appears to indicate that the FLSA rail carrier exemption applies if any aspect of a defendant's operation of a rail carrier is subject to STB's jurisdiction under the ICCTA," *Greene I*, 2024 WL 4235480, at *12 n.18, and the Court now draws that conclusion.  The language of the FLSA exception is clear, and it makes the employer's status determinative.  Under 29 U.S.C. § 213(b)(2), the employer only has to be "engaged in the operation of a rail carrier subject to [the ICCTA]."  There is no threshold requirement for how much of the rail carrier's operations have to be governed by the STB.

16

Plaintiffs' only argument on this specific question is an appeal to the savings clause of the ICCTA's public transportation exception, which says that a local government authority is still "subject to applicable laws of the United States related to . . . employment." 49 U.S.C. § 10501(c)(3)(A)(iii). Plaintiffs do not dispute that both MNR and LIRR, New York public benefit corporations that are subsidiaries of the MTA, operate public transportation services under the authority of a local government. (Pls.' Opp'n at 2, 10); *see also* 49 U.S.C. § 5302(11)(D) (including "a public corporation . . . established under the laws of a State" within the definition of "local government authority"). Plaintiffs argue that the savings clause means these railroads are subject to the FLSA protections—and *not* the FLSA exemptions. (Pls.' Opp'n at 12 (arguing that the Court should read the savings clause to mean that "provisions of the [FLSA] itself" apply, and not the FLSA exemption)). But that reading distorts the statutory text, since both the protections and exemptions are all contained within the FLSA, so the savings clause does not provide any interpretive assistance in determining whether the rail carrier exemption applies. *Cf. N.J. Transit Policemen's Benevolent Ass'n Loc. 304 v. N.J. Transit Corp.*, 806 F.2d 451, 453 (3d Cir. 1986) (coming to the same conclusion as to the ICA's similar provision). Accordingly, the Court concludes that, since at least some of

17

MNR and LIRR's operations are subject to STB jurisdiction, they are exempt from FLSA's overtime provision.[7]

## CONCLUSION

Because MNR and LIRR are rail carriers subject to the STB's jurisdiction, sufficient to meet the requirements for the FLSA's exemption from its overtime provisions, Defendants' motion for partial summary judgment is granted. Plaintiffs' FLSA claims brought on behalf of MNR and LIRR employees are dismissed with prejudice. The Clerk of Court is respectfully directed to terminate MNR and LIRR from the docket. The parties are directed to submit a joint proposed pretrial order by **February 23, 2026**, consistent with the undersigned's Individual Practices.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  January 22, 2026
       Central Islip, New York

---

[7] Though the Court finds that the FLSA's overtime requirements do not apply to these workers, the exemption exists, in part, because there are already other forces in place to protect employees' rights. (*See, e.g.*, Defs.' Mot. at 24 (discussing protections under the Railway Labor Act and collective bargaining rights, among others)). And employees of both MNR and LIRR appear to regularly invoke such protections. *See, e.g.*, *Anderson v. Metro-N. Commuter R.R. Co.*, No. 18-CV-6152, 2019 WL 1863245, at *1 (S.D.N.Y. Apr. 24, 2019) (addressing plaintiff's allegation that MNR violated the Railway Labor Act); *Ass'n of Commuter Rail Emps. Loc. No. 9 v. Metro-N. Commuter R.R. Co.*, 600 F. Supp. 3d 367, 371 (S.D.N.Y. 2022) ("[T]he RLA . . . governs labor relations in transportation industries including railroads."); *Bhd. of Locomotive Eng'rs & Trainmen v. Long Island R.R. Co.*, 539 F. Supp. 2d 664, 669 (E.D.N.Y. 2008) (enforcing arbitration award against LIRR for unpaid compensation), *aff'd*, 340 F. App'x 727 (2d Cir. 2009).